1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, | CASE NO. 1:11-cv-01958-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DISCHARGE AND AWARD OF ATTORNEY'S FEES BE GRANTED** |
| v. | |
| GARY SHUBIN, et al., | (Docket No. 15) |
| Defendants. | |
| _____ / | **OBJECTIONS DUE: 21 days** |

## I.   INTRODUCTION

On February 23, 2012, Plaintiff Transamerica Life Insurance Company ("Plaintiff") filed a motion for an order of discharge and an award of costs and attorney fees. (Doc. 15.) Plaintiff seeks to be discharged as the stakeholder in this interpleader action, to be awarded costs and attorneys' fees from the proceeds of the life insurance annuity, and to deposit the net balance of the annuity with the Court. (Doc. 15.) No opposition to Plaintiff's motion was filed. A hearing was held on April 11, 2012, and the Court ordered supplemental briefing. (Docs. 23, 27, 29.) Plaintiff has now provided all the requested supplemental information. (Docs. 30-32, 34.)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for discharge be GRANTED, Plaintiff's request for attorneys' fees be GRANTED IN PART in a reduced amount, Plaintiff deposit one-third of the annuity with the Court and distribute the remaining

two-thirds to the undisputed designated beneficiaries, and Plaintiff be discharged and dismissed from this action.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

On November 23, 2011, Plaintiff filed a complaint in interpleader, alleging that it may be subject to multiple conflicting claims concerning the distribution of a deferred life insurance annuity ("Annuity") payable on behalf of Annuitant/Owner Jeri Wood-Shubin ("Wood-Shubin").  (Doc. 2).

Plaintiff alleges that on April 27, 1990, Pacific Fidelity Life Insurance Company, now known as Transamerica (Plaintiff), issued the Annuity to Wood-Shubin.  (Doc. 2, ¶ 5.)  Wood-Shubin had filed a Annuity Policy Change Form on July 31, 2008, naming James Shubin ("James"), Gary Shubin ("Gary")[1], and Roberto Garcia ("Garcia" or, collectively, "Defendants") as beneficiaries of the Annuity, each with an equal one-third share.  (Doc. 2-1, Exh. B, pp. 8-10.)  James and Gary were two of Wood-Shubin's stepsons, and Garcia was allegedly Wood-Shubin's friend and caretaker. (Doc. 2-1, Exh. B, pp. 8-10.)   Prior to that change, James and Gary had been the previous beneficiaries, each with an equal one-half share of the Annuity.  (Doc. 2-1, Exh. B, p. 7.)

Wood-Shubin died on June 29, 2011.  (Doc. 2, ¶ 5.)  As of September 14, 2011, the value of the Annuity was $342,792.83. (Doc. 2, ¶ 5.)  Plaintiff alleges that, after it received telephonic notice that Wood-Shubin had died, it forwarded information regarding the status of the Annuity and claim forms for completion and filing to James, Gary, and Garcia.  (Doc. 2, ¶¶ 9-10, Exh. C.)  On October 3, 2011, Plaintiff received an Annuity Claimant's Statement from Garcia dated September 26, 2011.  (Doc. 2, ¶ 11, Exh. D.)

Shortly after receipt of Garcia's Claimant Statement, Plaintiff alleges that it became aware that on August 25, 2011, a lawsuit had been filed in the Frenso County Superior Court in the case of *Evelyn Lauderdale, as Trustee of the Jeri L. Shubin 2007 Trust, v. Roberto Garcia*, case no. 11 CECG02841.  (Doc. 2, ¶ 12, Exh. E.)  The operative pleading in the state action asserts claims against Garcia for fraud (intentional misrepresentation), emotional distress, elder abuse, conversion,

---

[1] The Court means no disrespect to James Shubin and Gary Shubin by referring to them by their given names; however, since they both share the same surname, referring to them by their first names allows for ease of reference.

specific performance, accounting, recovery of funds claimed to belong to the trust, and undue influence.  (Doc. 30, pp. 5-19.)  The operative complaint alleges that, due to Wood-Shubin's dementia, Garcia was able to dominate and control Wood-Shubin's daily routine and financial affairs and improperly converted her assets for Garcia's own benefit.  (Doc. 30, pp. 5-19.)

In the complaint in the instant action, Plaintiff "admits that it owes the distribution of the death benefit proceeds" on Wood-Shubin's Annuity, but asserts that "due to conflicting claims and the filed lawsuit" against Garcia in Fresno County Superior Court, Plaintiff "is at risk of multiple liability." (Doc. 2, ¶ 14.)  As noted above, Plaintiff alleges that Wood-Shubin had filed an Annuity Policy Change Form on July 31, 2008, adding Garcia as a one-third beneficiary, and that prior to that change James and Gary had been the previous beneficiaries, each with an equal one-half share. (Doc. 2-1, Exh. B, p. 7-10.)  Plaintiff contends that this change occurred during the time period that Garcia, according to the state court lawsuit, allegedly used improper influence over Wood-Shubin and committed fraud and elder abuse.  (See Doc. 17, 4:18-22.)  As such, Plaintiff believes that Defendants are not in agreement concerning which beneficiaries should receive the proceeds of the Annuity.  (Doc. 2, ¶ 15.)

Plaintiff is concerned that if the state court lawsuit is successful and Garcia is found to have unduly influenced Wood-Shubin, the other beneficiaries would thus be able to challenge the validity of the designation of beneficiaries as to the Annuity.  (Doc. 17, 4:23-25.)  Plaintiff asserts that if it pays Garcia now and he is later found to have unduly influenced Wood-Shubin, Plaintiff would then be liable for having paid the wrong person.  (Doc. 17, 4:25-27.)  Accordingly, Plaintiff filed the instant suit, alleging that the proceeds should be subject to interpleader.  (Doc. 17, 4:27.)

**B.    Procedural Background**

On November 23, 2011, Plaintiff filed a complaint in interpleader against Defendants Gary, James, and Garcia.  (Doc. 2.)  Gary was served on December 9, 2011, Garcia was served on December 10, 2011, and James was served on January 19, 2012.  (Docs. 7, 8, 14.)  Garcia filed an answer on January 3, 2012.  (Doc. 9.)  James and Gary failed to file a responsive pleading.  On January 20, 2012, Plaintiff requested entry of default against Gary, which was entered by the Clerk of the Court on January 23, 2012.  (Docs. 10, 11.)

3

1    On February 23, 2012, Plaintiff filed the instant motion for order for discharge and award of

2  costs and attorney fees. (Doc. 15.) No opposition was filed. A hearing was held on April 11, 2012,

3  before Magistrate Judge Sheila K. Oberto. (Doc. 23.) Although Garcia had not filed a response to

4  Plaintiff's motion, Garcia's counsel was present at the hearing. On the same day, based on

5  representations made at the hearing, Plaintiff filed a Request for Entry of Default as to James Shubin.

6  (Doc. 24.)

7    On April 12, 2012, the Court issued an order requiring Plaintiff to submit supplemental

8  briefing regarding issues raised at the hearing. (Doc. 27.) Specifically, the Court required Plaintiff

9  to submit a copy of the current operative pleading in the Fresno County Court action and to explain

10  if there were any changes in that pleading that affected Plaintiff's assertion in this action regarding

11  Plaintiff's potential liability.[2] (Doc. 27, 4:5-13.) Plaintiff was required to set forth how the current

12  dispute against Garcia in the state action supports Plaintiff's assertion that it is at risk of multiple

13  litigation or potential liability as to the Annuity, and whether the Annuity was part of or separate

14  from the state court action. Additionally, pursuant to the agreement reached at the hearing, Plaintiff

15  and Garcia were required to file a stipulation setting forth that the only portion of the Annuity in

16  dispute is the amount payable to Garcia, as well as any amount due to Plaintiff for attorneys' fees and

17  costs, and that there is no dispute as to the portion of Annuity that is payable to Gary and James.

18  (Doc. 27, 4:8-26.) Plaintiff was also required to establish the amount of attorneys' fees and costs that

19  it seeks. (Doc. 27, 5:1-3.)

20    On April 16, 2012, the Court issued an order requiring Plaintiff to provide supplemental

21  briefing concerning service on James prior to the entry of default. (Doc. 29.) The Court required

22  Plaintiff to provide a supplemental declaration from the process service establishing that the person

23  who accepted service on James' behalf "was at least 18 years of age and/or of suitable age and

24  discretion to accept service." (Doc. 29, 2:6-7.)

25    On April 23, 2012, Plaintiff filed a supplemental brief, a declaration from counsel in support

26  of attorneys' fees and costs, and a stipulation with Garcia regarding the portion of the Annuity subject

27

28      [2] Upon review the state court's docket, the Court had determined that the pleading submitted by Plaintiff with the instant motion was not the operative pleading in the state court action.

to interpleader and fees.  (Docs. 30-32.)  Plaintiff's supplemental brief indicated that the second amended complaint filed in the state court action did not alter Plaintiff's concern in the instant action, since "[t]he Second Amended Complaint contends that the disposition of assets to Mr. Garcia was not the result of the decedent's true intention.  That conclusion would open the door to a contention that the actions of Garcia also caused the decedent to change the beneficiaries on the annuity and puts at risk at least one third of the annuity." (Doc. 30, 3:5-9.)  Plaintiff further asserts that "[i]t does not appear that the Transamerica Life Insurance annuity is mentioned in the pending state court complaint.  There are no specific allegations that the actions of Mr. Garcia were specifically directed to the annuity or to the designation of beneficiaries under the annuity." (Doc. 30, 2:26-3:1.)  Plaintiff seeks attorneys' fees in the total amount of $9,063.25, and indicates that these fees are reasonable and should be deducted from the entire amount of the Annuity. (Doc. 30, 3:10-25; Doc. 31, Gilmore Decl., ¶ 5.)

The stipulation between Plaintiff and Garcia provides that two-thirds of the Annuity – the one-third shares that are each designated to James and Gary – are not in dispute and that Garcia makes no claim as to those interests.  (Doc. 32, ¶ 2.)  Plaintiff and Garcia agree that Plaintiff is entitled to recover its fees and costs from the Annuity and that such fees should be deducted from the Annuity as a whole, thus making each beneficiary (James, Gary, and Garcia) responsible for one-third of the total fees and costs.  (Doc. 32, ¶ 3.)

On May 24, 2012, Plaintiff filed a stipulation regarding the validity of service on James, who "acknowledge[d] valid and effective service on him" and thus addressed the Court's expressed concern that James was properly served.  (Doc. 34, 1:27; *see also* Doc. 29.)  On May 29, 2012, the Clerk of the Court entered default against James. (Doc. 36.)

### III. DISCUSSION

#### A.   Legal Standard

"In an interpleader action, the 'stakeholder' of a sum of money sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money." *Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1265 (9th Cir. 1992). As such, the stakeholder forces the potential claimants to litigate who is properly entitled to the fund.

*See id.*; *Herman Miller, Inc. Retirement Income Plan v. Magallon*, No. 2:07–cv–00162–MCE–GGH, 2008 WL 2620748, at *1 (E.D. Cal. Jul. 2, 2008); *Metro. Life Ins. Co. v. Billini*, No. CIV. S-06-02918 WBS KJM, 2007 WL 4209405, at *2, (E.D. Cal. Nov. 27, 2007).   "Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation." *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) (explaining that interpleaders are "governed by equitable principles") (citations omitted).

"Procedurally, an interpleader action encompasses two stages. First, the court determines the propriety of interpleading the adverse claimants and relieving the stakeholder from liability.  The second stage involves an adjudication of the adverse claims of the defendant claimants." *Billini*, 2007 WL 4209405, at *2 (internal citations and quotation marks omitted).

**B.   Analysis**

Plaintiff's motion deals with the first stage of an interpleader action.  As such, the Court must determine whether Plaintiff's interpleader action is proper and, if so, whether Plaintiff should be discharged. *See id.*

**1.    Plaintiff Properly Pleads a Rule 22 Interpleader Action**

**a.    The Court Has Subject Matter Jurisdiction Based on Diversity**

A Court's jurisdiction over an interpleader may be established in two distinct manners. A "Rule interpleader" may be brought pursuant to Federal Rule of Civil Procedure 22. *Magallon*, 2008 WL 2620748, at *2.  However, Rule 22 is a procedural device and does not alone establish subject matter jurisdiction. *Id.*; *Bayona*, 223 F.3d at 1033.  Therefore, a Rule interpleader action is proper only when jurisdiction can be established under general statutes governing federal court jurisdiction. *Bayona*, 223 F.3d at 1033.  Alternatively, subject-matter jurisdiction for a "Statutory interpleader" may be established pursuant to 28 U.S.C. § 1335 when there exists "minimal diversity" between the claimants and the amount in controversy exceeds $500. *Cripps*, 980 F.2d at 1265; 28 U.S.C. § 1335.

Here, Plaintiff does not plead facts establishing minimal diversity under Section 1335, but instead fashions the complaint and motion for discharge as a Rule 22 interpleader action based on

diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Doc. 2, ¶ 6; Doc. 17, 3:16-24.)   Section 1332(a)(1) provides that the district court shall have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states.  28 U.S.C. § 1332(a)(1).  Plaintiff pleads that it is an Iowa corporation, Defendants are California residents, and the value of the Annuity, as of September 14, 2011, was $342,792.83.  (Doc. 2, ¶¶ 1-5.)  As such, Plaintiff establishes that the Court has subject matter jurisdiction under Rule 22 over Plaintiff's interpleader complaint based on diversity

### b.  Plaintiff Establishes Legitimate Fear of Multiple Litigation or Multiple Liability as to Garcia's Share of the Annuity

Rule 22(a)(1) pertains to interpleader actions by a plaintiff and states:

> Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead.  Joinder for interpleader is proper even though: (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

"Interpleader is appropriate if the stakeholder-plaintiff has 'a real and reasonable fear of double liability or vexatious, conflicting claims' . . . This 'danger need not be immediate; any possibility of having to pay more than is justly due, no matter how improbable or remote, will suffice.'"  *Prudential Ins. Co. of Am. v. Wells*, No. C09-0132 BZ, 2009 WL 1457676, at *2 (N.D. Cal. May 21, 2009); *see also Wash. Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) (finding that "[u]nder Rule 22, interpleader is proper if the party requesting it is or may be exposed to double or multiple liability" (citation omitted)).  As such, "[t]he court's jurisdiction in an interpleader action extends both to potential and actual claims."  *United Investors Life Ins. Co. v. Grant*, No. 2:05-CV-1716-MCE-DAD, 2006 WL 1282618, at *2 (E.D. Cal. May 9, 2006).

Here, Plaintiff asserts that it has a real and legitimate fear of multiple litigation with regard to claims against the Annuity.  Plaintiff's Director of Post Operations, Tracy Martin ("Martin"), declares that at the time of Wood-Shubin's death there were three beneficiaries – James, Gary, and Garcia. (Doc. 16, Martin Decl., ¶ 3.)  Exhibits to the complaint indicate that Wood-Shubin added

Garcia as a beneficiary on July 31, 2008.  (Doc. 2-1, pp. 8-10.)  On August 25, 2011, Evelyn Lauderdale, as Trustee of the Jeri L. Shubin 2007 Trust, filed a first amended complaint against Garcia in Fresno County Superior Court, case no. 11CECG02841, for fraud (intentional misrepresentation), emotional distress, elder abuse, conversion, specific performance, and accounting, alleging that, due to Wood-Shubin's dementia and diminished mental and physical capacity, Garcia unduly influenced her.  (Doc. 2-1, pp. 26-51; Doc. 18, Exh. 2, pp. 6-31.)

Plaintiff contends that, in reviewing the lawsuit, "it appears that the time frame during which the alleged undue influence occurred coincides with the last beneficiary change for the annuity at issue." (Doc. 16, Martin Decl., ¶ 5.)  Plaintiff is concerned that "if it paid the annuity out as per the most recent beneficiary statement and it was later established that Mr. Garcia had in fact unduly influenced Ms. Shubin, there was a risk that, at least as to that portion of the annuity, Transamerica would be at risk of double payment."  (Doc. 16, Martin Decl., ¶ 6.)

In the supplemental briefing filed on April 23, 2012, Plaintiff indicates that the subsequent pleadings filed in the state court action do not alter Plaintiff's concerns in this action.  (Doc. 30.) Plaintiff contends that "although there were changes to the legal claims asserted" in amended complaints in the state court action, "the underlying factual basis for the claims is unchanged. . . . [T]here remain a series of contentions that Mr. Garcia, through fraud, undue influence and elder abuse, to name three of the theories asserted, got Ms. [Wood-]Shubin, while increasingly suffering from the effects of dementia, to alter her dispositive provisions in her trust and will to benefit Mr. Garcia at the expense of blood relatives." (Doc. 30, 2:10-16.)  As such, Plaintiff asserts that if the allegations against Garcia in the state action are proven true, then "[t]hat conclusion would open the door to a contention that the actions of Garcia also caused the decedent [Wood-Shubin] to change the beneficiaries on the annuity and puts at risk at least one third of the annuity." (Doc. 30, 3:1-9.)

Accordingly, Plaintiff establishes that it could be at risk of multiple liability or litigation as to the portion of the Annuity purportedly due to Garcia if Plaintiff pays Garcia as the current beneficiary designation requires, and it is later determined that Garcia had unduly influenced Wood-Shubin.  Plaintiff contends that it could be held liable for improperly paying Garcia a portion

of the Annuity.  Plaintiff thus meets the burden of showing that Plaintiff "may be exposed to double or multiple liability" under Rule 22(a)(1).

### 2.     Plaintiff's Motion for Discharge Should be Granted

Once the court determines that an interpleader is proper, it may discharge the stakeholder from further liability. *OM Financial Life Ins. Co. v. Helton*, No. CIV. 2:09-1989 WBS EFB, 2010 WL 3825655, at *3 (E.D. Cal. Sept. 28, 2010); *see also Wells Fargo Bank v. PACCAR Fin. Corp.*, No. 1:08-CV-00904 AWI SMS, 2009 WL 211386, at *2 (E.D. Cal. Jan. 28, 2009) (explaining that in a rule interpleader action, "[i]f an interpleading plaintiff has no interest in the stake, the plaintiff should be dismissed").   Interpleader is a remedial device to be liberally construed. *Prudential Ins. of Am.*, 2009 WL 1457676, at *2 (citing *State Farm & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967)).  "A court should readily discharge a disinterested stakeholder from further liability absent a stakeholder's bad faith in commencing an interpleader action, potential independent liability to a claimant, or failure to satisfy requirements of rule or statutory interpleader." *OM Financial Life Ins. Co.,* 2010 WL 3825655, at *3 (citations omitted).

Here, Plaintiff sets forth that it is an "innocent" stakeholder in that it has engaged in no wrongdoing and its only obligation is to pay out the Annuity; Plaintiff has no interest in the stake. (*See* Doc. 16, Martin Decl., ¶ 7.)  Further, as indicated above, Plaintiff has shown that an interpleader action is proper.  No oppositions have been filed against Plaintiff's motion, and Garcia stipulates that Plaintiff should be discharged from this action.  (Doc. 32, ¶ 4.)  Further, Defendants Gary and James failed to file responsive pleadings in this action and are currently in default.[3]  (Docs. 11, 36.)  As such, no objections have been raised and discharge of Plaintiff is appropriate.

### 3.     Amount of Annuity Plaintiff Should Deposit with the Court

Plaintiff's motion indicates that Plaintiff seeks to pay its fees from the Annuity and to deposit the net amount remaining with the Court.  (Doc. 17, 6:3-4; Martin Decl., Doc. 16, ¶ 7).  Generally, "[t]he deposit of the disputed funds with the court is a jurisdictional requirement for a successful

---

[3] The Court had expressed a concern regarding service of process on James (*See* Doc. 29.)  However, James stipulated that he "acknowledges valid and effective service" and default was entered.  (Doc. 34, ¶ 2; Doc. 36.)  James further stipulated that he had no objection to Plaintiff being discharged from this action.  (Doc. 34, ¶ 3.)

statutory interpleader action . . . However, Rule 22 does not require deposit of funds with the court before discharging the stakeholder in a Rule interpleader action; although, such a deposit may be ordered at the discretion of the court pursuant to Rule 67." *Magallon*, 2008 WL 2620748, at *2 (citing 28 U.S.C. § 1335; *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 81–82 (9th Cir.1982); Fed. R. Civ. P. 67).  Here, Plaintiff agrees to deposit the funds with the Court, so there is no issue raised regarding whether the funds are required to be deposited.  The amount of the Annuity that Plaintiff should deposit with the Court, however, must be determined.

### a.    Amount of Annuity in Dispute

In its motion, Plaintiff initially indicated that it was seeking to deposit the full amount of the Annuity with the Court, approximately $342,000 less any fees and costs owed to Plaintiff, for the Court to determine the proper adjudication and disbursement of the Annuity.  (*See* Doc. 6, Martin Decl., ¶¶ 3, 7.)  However, the amount that Plaintiff would be required to deposit with the Court is "the highest amount for which it ultimately may be liable."  *CNA Ins. Companies v. Waters*, 926 F.2d 247, 250, n. 6 (3d Cir. 1991).  Thus, although Plaintiff initially sought to deposit the entire amount of the Annuity, Plaintiff did not establish that there is a dispute as to the full amount.

There is no dispute raised regarding the two-third shares of the Annuity designated to James and Gary as beneficiaries.  (*See* Doc. 32, ¶ 2.)  The only dispute concerns Garcia's one-third share of the Annuity.  (*See* Doc. 16, Martin Decl.,¶ 6 (declaring that Plaintiff could be liable if "it was later established that Mr. Garcia had in fact unduly influenced Ms. Shubin, there was a risk, **at least to that portion of the annuity**, Transamerica would be at risk of double payment." (emphasis added)).)  As such, the highest amount that Plaintiff may ultimately be liable regarding the Annuity is the amount that Plaintiff has shown to be in dispute, which is the one-third that is purportedly owed to Garcia.

On April 23, 2012, Plaintiff and Garcia filed a stipulation stating that "[o]nly the one third designated to go to Defendant Roberto Garcia is in dispute in this action.  The one third each designated to go to James Shubin and Gary Shubin is not in dispute as Roberto Garcia makes no claim as to those interests."  (Doc. 32, ¶ 2.)  Plaintiff thus sets forth that, after it deducts its Court-approved fees and costs, it will distribute two-thirds of the Annuity, with one-third each to

James and Gary, and will deposit the remaining one-third, the disputed amount purportedly due to Garcia, with the Court.  (Doc. 32, ¶ 3.)

At the time the complaint was filed, Plaintiff indicated that the value of the Annuity was estimated to be $342,792.83.  (Doc. 2, ¶ 5.)  The final value of the Annuity, and thus the amount that Plaintiff will need to deposit with the Court, will be determined by Plaintiff on the date that the distributions to James and Gary and the deposit with the Court are made.[4]

### b.   Attorneys' Fees

Plaintiff's motion asserts that Plaintiff should be awarded its costs and attorneys' fees.  "Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action."  *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir. 1984) (citation omitted).  "The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court."  *Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) (affirming a district court's award of $3,000.00 in fees when the stakeholder had requested $97,000.00).

When the stakeholder requesting fees is an insurance company, interpleader actions offer two distinct benefits.  First, "the availability of attorneys' fees for interpleader plaintiffs recognizes that by bringing the action, the plaintiff benefits all parties 'by promoting early litigation on the ownership of the fund, thus preventing dissipation.'"  *Id*. (citation omitted). Second, interpleader is a "valuable procedural device" for insurance companies that are faced with competing claims because it provides a way for the insurance companies to "disclaim[ ] any position as to which of the claimants is entitled to the fund."  *Id*.; *see also Billini*, 2007 WL 4209405, at *3.

Due to the latter benefit, some courts outside of the Ninth Circuit have denied attorneys' fees where the stakeholder is an insurance company, finding that competing claims are part of the ordinary course of business for an insurance company and that an interpleader action should not be used to transfer these ordinary business expenses to the claimants. *See, e.g., Aetna U.S. Healthcare*

---

[4] The Court notes that because the Court has jurisdiction of this interpleader action under Rule 22 based on diversity, the Court retains jurisdiction under Section 1332(a)(1), since one-third of the estimated $342,792.83 Annuity is approximately $114,264.28 and thus is over required the $75,000 minimum amount for a diversity action. *See* 28 U.S.C. § 1332(a)(1).

1  *v. Higgs*, 962 F.Supp. 1412, 1414-15 (D. Kan. 1997); *Sun Life Assurance Co. of Canada v. Thomas*,

2  735 F. Supp. 730, 733 (W.D. Mich.1990); *Mut. of Omaha Ins. Co. v. Dolby,* 531 F. Supp. 511, 517

3  (E.D. Pa. 1982); *see also Allianz Life Ins. v. Agorio*, No. C 11-04404 LB, 2012 WL 440722, at *5

4  (N.D. Cal. Feb. 10, 2012); *Billini*, 2007 WL 4209405, at *3.  The Ninth Circuit, however, has not

5  barred recovery of fees and costs when the stakeholder is an insurance company, but has explained

6  that fee awards in interpleader actions are "typically modest" because "there is an important policy

7  interest in seeing that the fee award does not deplete the fund at the expense of the party who is

8  ultimately deemed entitled to it." *Tise*, 234 F.3d at 426-27; *see also Allianz Life Ins.,*  2012 WL

9  440722, at *5; *Billini*, 2007 WL 4209405, at *3.

10     The Court "undertakes a lodestar analysis to guide its determination regarding the appropriate

11  amount of attorneys' fees and costs." *Allianz Life Ins.,* 2012 WL 440722, at *5 (citation omitted).

12  Fees that are compensable include "preparing the complaint, obtaining service of process on the

13  claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing

14  it from the action," as well as seeking entry of default judgment.  *See Tise*, 234 F.3d at 426-27;

15  *PACCAR Fin. Corp.*, 2009 WL 211386, at *2.

16     Plaintiff requests attorneys' fees and costs in the total amount of $9,063.25.  (Doc. 31,

17  Gilmore Decl., ¶ 5.)  This includes fees for counsel David Gilmore for 17.00 hours at the rate of

18  either $325 or $330 per hour, fees for counsel Scott Jones for 12.50 hours at the rate of either $190

19  or $195 per hour, fees for paralegal Suzanne Carroll for 4.15 hours at the rate of $105 per hour, and

20  costs in the amount of $657.50.  (Doc. 31, Gilmore Decl., ¶¶ 3-5.)

21                  **i.    Hourly Rates**

22     The burden of establishing entitlement to an attorneys' fee award lies solely with the claimant.

23  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "[T]he burden is on the fee applicant to produce

24  satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line

25  with those prevailing in the community for similar services by lawyers of reasonably comparable

26  skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984); *see also Schwarz*

27  *v. Secy. of Health and Human Servs.*, 73 F.3d 895, 908 (9th Cir.1995).  As such, Plaintiff must

28  establish that the requested rates are reasonable in the Eastern District of California, Fresno area.

*See Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991) ("Generally, the relevant community is one in which the district court sits."); *see also Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000).

Plaintiff submits a declaration from its counsel, Mr. Gilmore, stating that he has been a practicing attorney since 1982 handling civil litigation matters relating to commercial, real estate, and probate and trust matters; Mr. Gilmore bills at a rate of $325 an hour for 2011 charges and $330 for 2012 charges. (Doc. 31, Gilmore Decl, ¶ 3.) Mr. Gilmore states that work was performed on this matter by Mr. Jones, a four-year associate at the rate of $190 for 2011 charges and $195 for 2012 charges, and by Ms. Carroll, a paralegal with 30 years experience at the rate of $105 per hour.[5] (Doc. 31, Gilmore Decl, ¶ 3.) Mr. Gilmore further declares that he is "familiar with the rates charged in the Fresno area for attorneys that work in this area of law," seeing those rates "through fee applications" prepared in "related matters" and that he has "on occasion, acted as an expert witness about the reasonableness of fees in this area." (Doc. 31, Gilmore Decl., ¶ 6.) As such, he is "comfortable that the rates charged by [his] office are well within the normal range for fees for counsel" with the level of experience indicated. (Doc. 31, Gilmore Decl., ¶ 6.)

No opposition or objection has been filed regarding Plaintiff's requested fees. In 2009, this Court previously accepted a similar declaration and found that a rate similar to that requested by Mr. Gilmore was reasonable in an interpleader action for an attorney who had been practicing law for over 30 years. *See PACCAR Fin. Corp.*, 2009 WL 211386, at *3 (finding that a rate of $315 was reasonable). Further, the rates requested – $325 to $330 for an attorney with over 30 years experience, $190 to $195 for an attorney with four years experience, and $105 for a paralegal support staff – are within the rates found to be reasonable in other cases in the Fresno Division of the United States District Court for the Eastern District of California. *See*, *e.g.*, *Valtierra v. Wells Fargo Bank, N.A.*, No. CIV-F-10-0849 AWI MJS, 2012 WL 985700 (E.D. Cal. Mar. 22, 2012); *Winding v. NDEX*

---

[5] Although Mr. Gilmore seeks a rate of $190 per hour for services provided by Mr. Jones in 2011, a review of the billing records shows that all of Mr. Jones' services were performed in 2012. (*See* Doc. 31, Gilmore Decl., Exhs. 1-2.) Thus, the applicable rate for Mr. Jones' work is $195 per hour.

*W., LLC*, No. CV F 10-2026 AWI DLB, 2011 WL 5244335 (E.D. Cal. Nov. 1, 2011).  Accordingly, the hourly rates requested by counsel are appropriate and should be awarded.

### ii.   Hours Expended

Plaintiff requests 4.15 hours for Ms. Carroll's paralegal services, 12.50 hours for Mr. Jones' services as a four-year associate, and a total of 17.00 hours for Mr. Gilmore's services (9.00 hours for work previously completed and an estimate of 8.00 hours for future work).   (Doc. 31, Gilmore Decl., Exhs. 1-2.)

As noted above, attorneys' fees in an interpleader action are limited to time expended on preparing the complaint, obtaining service of process on the claimants to the fund, obtaining default judgment, and preparing an order discharging the plaintiff from liability and dismissing it from the action.  *Tise*, 234 F.3d at 426-27; *PACCAR Fin. Corp.*, 2009 WL 211386, at *2.  Based on those limitations, the Court has reviewed the billing records submitted by Mr. Gilmore on behalf of Plaintiff and determined that charges for calendaring, reviewing and exchanging emails and other correspondence, and reviewing the Court's docket are not appropriate. (*See* Doc. 31, Gilmore Decl., Exhs. 1-2.)

Accordingly, the 12.50 hours requested for Mr. Jones' services are reasonable, as all of his time was spent researching and preparing the instant motion.  (*See* Doc. 31, Gilmore Decl., Exhs. 1-2.)  However, it is appropriate to reduce the hours billed by Ms. Carroll and Mr. Gilmore, as there are entries for these services that are not reasonable for an interpleader action.

Several of the entries are presented in block-billing format.  (*See* Doc. 31, Gilmore Decl., entries for dates of service November 28, 2011; December 8 and 27, 2011; January 3, 18, 20, 23, and 31, 2012; February 6, 13, and 27, 2012; and April 11, 2012.)  Block billing refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996).  "Block billing, which bundles tasks in a block of time, makes it extremely difficult for a court to evaluate the reasonableness of the number of hours expended." *Aranda v. Astrue*, No. CV 08-340-MA, 2011 WL 2413996, at *5 (D. Or. June 8, 2011).  However, while "the fee applicant bears the burden of

14

submitting 'evidence supporting the hours worked and the rates claimed,'" counsel is "'not required to record in great detail how each minute of his time was expended.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley,* 461 U.S. at 437 n.12.). Thus, in *Fischer*, the Ninth Circuit explained that, rather than refusing to award any fees where documentation is insufficient because of block-billing, the court should either request more information or "simply reduce[] the fee to a reasonable amount." *Id.* (citing *Hensley*, 461 U.S. at 433 for the proposition that a district court can "reduce" the fee award where the documentation is inadequate).

Accordingly, either the entire billing entries or portions of these billing entries should be disallowed. For Ms. Carroll, 1.90 hours should be deducted as follows: 1.65 total hours in 2011 and 2012 for services rendered for "attention to calendaring" and 0.25 hours for services rendered for reviewing the Court's docket on January 18, 2012. (*See* Doc. 31, Gilmore Decl., Exhs. 1-2; entries for dates of service of December 1 and 28, 2011; January 4, 18, and 23, 2012; February 27, 2012, March 8, 2012; and April 13 and 17, 2012.)

As for Mr. Gilmore's hours, out of the 9.00 hours requested for completed work, 3.35 hours should be deducted as they relate to preparing and exchanging emails and reviewing the Court's docket. (*See* Doc. 31, Gilmore Decl., Exhs. 1-2, deductions should be made for entries or portions of entries for dates of service of November 28, 2011 (0.25 hours); December 8, 27, and 29, 2011, (0.10, 0.10, and 0.25 hours respectively); January 3, 17, 20, 23, and 31, 2012, (0.50, 0.25, 0.10, 0.10, and 0.10 hours respectively); February 6, 13, 24, and 27, 2012, (0.25, 0.10, 0.25, and 0.25 hours respectively); and April 11, 16, and 18, 2012, (0.25, 0.25, and 0.25 hours respectively).) Mr. Gilmore also requests 8.00 hours for future work: 2.00 hours to complete the supplemental brief, 1.00 hours to complete the stipulation with counsel for Garcia, and 5.00 hours to "communicate with [his] client, to deal with the court's approval of the orders and to get the funds deposited with the court." (Doc. 31, Gilmore Decl., ¶ 5.) Mr. Gilmore has completed 3.00 of the hours requested related to the supplemental briefing and the stipulation, and this time is reasonable. However, as for the 5.00 hours remaining for additional work, this time is excessive and is unsupported, as it requests services for communication not covered by an interpleader action and for routine fees related to the distribution of the Annuity, and contrasts with the Ninth Circuit's instruction that attorneys' fees be

"typically modest." *Tise*, 234 F.3d at 426-27; *PACCAR Fin. Corp.*, 2009 WL 211386, at \*2. Accordingly, Mr. Gilmore's request for additional time for future services should be reduced by 2.00 hours.

### iii.    Total Attorneys' Fees

In sum, Plaintiff should be awarded attorneys' fees as follows:

| Ms. Carroll | 2011 | 2012 | Total |
|---|---|---|---|
| Hours: | 0 (0.50 - 0.50) | 2.25 (3.65 - 1.40) | 2.25 |
| Rate: | $105.00 | $105.00 | |
| Total Award: | $0 | $236.25 | $236.25 |

| Mr. Jones | 2011 | 2012 | Total |
|---|---|---|---|
| Hours: | 0 (no work performed) | 12.50 | 12.50 |
| Rate: | $190.00 | $195.00 | |
| Total Award | $0 | $2,437.50 | $2,437.50 |

| Mr. Gilmore | 2011 | 2012 | Total |
|---|---|---|---|
| Hours: | 2.30 (3.00 - 0.70) | 9.35 (14.00 - 4.65) | 11.40 |
| Rate: | $325.00 | $330.00 | |
| Total Award: | $747.50 | $3,085.50 | $3,833.00 |

Accordingly, Plaintiff should be awarded attorneys' fees in the total amount of **$6,506.75** ($236.25 plus $2,437.50 plus $3,833.00).

### iv.    Costs

Plaintiff requests costs in the amount of $657.50 for service of process, filing fees, and photocopies.  This amount is reasonable and should be awarded.

**C.     Future Proceedings**

After the stakeholder is discharged, procedurally the court moves on to the second stage of an interpleader proceeding involving the adjudication of the adverse claims of the defendant claimants. *Billini*, 2007 WL 4209405, at *2.  As such, the Court will issue an order regarding future proceedings in this action concerning the adjudication of the amount in dispute after a final order on Plaintiff's motion for discharge is issued.

## IV.     CONCLUSION AND RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, as well as the supplemental briefing and stipulation, the Court RECOMMENDS that:

1.     Plaintiff's motion for order of discharge and award of costs and attorneys' fees be GRANTED;

2.     Plaintiff be AWARDED attorneys' fees in the total amount of $6,506.75;

3.     Plaintiff be AWARDED costs in the total amount of $657.50;

4.     Plaintiff's award for attorneys' fees and costs be deducted from the total Annuity;

5.     After deducting the attorneys' fees and costs, Plaintiff DEPOSITS one-third of the total remaining Annuity, the amount designated to Defendant Roberto Garcia as a beneficiary, with the Clerk of the Court for later adjudication;

6.     Plaintiff DISTRIBUTES the remaining two-thirds of the Annuity – one-third each to Defendants Gary Shubin and James Shubin based on their beneficiary designation;

7.     Plaintiff be DISCHARGED and DISMISSED from this action; and

8.     Plaintiff is ORDERED to serve via United States mail a copy of this Findings and Recommendations on Defendants Gary Shubin and James Shubin.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C.

§ 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **July 10, 2012**                          /s/ **Sheila K. Oberto**
                                         UNITED STATES MAGISTRATE JUDGE

18